UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

               Plaintiff,

       v.

JOHN A. GRACE,

               Defendant.

No. CR-04-0026-FVS

ORDER DENYING MOTION FOR
NEW TRIAL

**THIS MATTER** came before the Court on Defendant's Motion for Acquittal, or in the Alternative, for New Trial, Ct. Rec. 141. The Court heard oral argument in this matter on April 8, 2005. Plaintiff is represented by Assistant United States Attorney Joseph H. Harrington. Defendant is represented by Philip E. Nino.

I. <u>PROCEDURAL HISTORY</u>

Count I of the Superseding Indictment charged the Defendant with distribution of 5 grams or more of a mixture or substance containing cocaine base in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Count II charged the Defendant with assault of a federal officer in violation of 18 U.S.C. § 111(a)(1) and (b). On February 10, 2005, a jury convicted the Defendant on both counts. Defendant now moves for judgment of acquittal on count II, or in the alternative, for a new trial on the basis that the Court erred in denying his motion to

ORDER DENYING MOTION FOR NEW TRIAL - 1

sever and his motion to suppress his statements.  In connection with
Defendant's motion, the Court requested briefing on the issue of
whether the prosecutor's misstatements regarding the burden of proof
on self-defense amounted to plain error.

**II.  <u>BACKGROUND</u>**

The following summary of facts is provided for background
purposes only.  On January 21, 2004, the Defendant agreed to meet the
Government's cooperating source (CS) in the Rosauers parking lot on
3rd Avenue in West Spokane to sell the CS some crack cocaine.  The
CS, who had been instructed to wait at the front entrance to the
store, was picked up by the Defendant in a Mitsubishi Sports Utility
Vehicle (SUV).  The SUV then parked in the Rosauers lot in an area
where the Drug Enforcement Administration (DEA) had set up
surveillance.  A few minutes later, the CS exited the SUV and gave
surveillance officers a pre-arranged "buy complete" signal.  DEA
Agent Michael Zidack and Task Force Officer (TFO) Rick Taylor then
exited their vehicle and proceeded towards the Defendant's SUV on
foot.  Other surveillance officers entered into the parking lot by
car to assist with the stop of Defendant's vehicle.

Agent Zidack testified at trial that he was wearing marked
police raid gear and yelled "Stop the vehicle. Show us your hands"
numerous times.  TR, at 262, 265.  TFO Taylor testified that he too
was wearing police raid gear and was yelling "Police, Stop the car.
Stop, Police, Stop."  TR, at 228-29.  Although these events
transpired very quickly, TFO Taylor believed that at one point he
made eye contact with the Defendant.  TR, at 230.  Both officers had

their weapons drawn.  TR, at 230, 261.  The Defendant is accused of
accelerating his vehicle directly towards Agent Zidack in an attempt
to hit him.  Agent Zidack shot the Defendant through the windshield
and then jumped out of the way of the oncoming vehicle.

Defendant disputed whether the "police" markings on Agent
Zidack's and TFO Taylor's raid gear were visible.  There was evidence
that Agent Zidack was wearing a jacket over his marked bullet proof
vest and that the markings on TFO Taylor's vest were smaller and
therefore less visible than the markings on Agent Zidack's vest.
*See, e.g.,* Government's Exhibit 12 (Photograph of Detective Rick
Taylor's vest depicting "Police")(size of markings); Government's
Exhibit 13 (Photograph of Special Agent Zidack's vest depicting
"Police")(size of markings); Testimony of Agent Zidack (TR, at
262)(jacket partially obstructed markings on vest); Testimony of Fred
Shuman (TR, at 448-49)(Zidack wore a hooded jacket); Testimony of Eli
Kington (TR, at 458-59)(both officers wearing dark clothing).  The
Defendant also disputed whether Agent Zidack's and TFO Taylor's
verbal commands were audible.  *See, e.g.,* Testimony of Eli Kington
(TR, at 458-59); Testimony of TFO Jay McNall (TR, at 441).  The
Government contended that the Defendant must have heard the officers'
commands because the window of the Defendant's car was "nearly ½ way
rolled down when the officers were identifying themselves and yelling
at him."  *See* United States' Response.  This is a slight
overstatement of the Government's evidence.  *See* Government's Exhibit
18.  In addition, there was also testimony from a defense expert that
the window must have been rolled up when Agent Zidack shot the

ORDER DENYING MOTION FOR NEW TRIAL - 3

Defendant based on a blood spatter pattern on a specific part of the window.[1]

Upon Defendant's arrest he was transported to the Sacred Heart Medical Center Emergency Room to receive medical attention. Defendant asked if anyone wanted to speak to him.  At approximately 2:00 a.m., agents and officers interviewed Defendant after advising him of his *Miranda* rights.  Detective Donald Giese, who was the primary interrogator, stated that the Defendant had no trouble understanding or responding to questions.  The Defendant subsequently confessed to the drug crime but made statements which supported his theory of self-defense on the assault charge.  In sum, the Defendant told Detective Giese that he was frightened for his life because individuals wearing masks and carrying guns in the parking lot were trying to rob him.

### III.  <u>DISCUSSION</u>

On a motion for judgment of acquittal, the court reviews the sufficiency of the evidence in the light most favorable to the government.  *United States v. Alston*, 974 F.2d 1206, 1210 (9th Cir. 1992).  "A judgment of acquittal is improper if, viewing the evidence in the light most favorable to the government, a rational trier of fact could have found the defendant guilty beyond a reasonable doubt."  *Id*.  A rational trier of fact could have found the Defendant guilty of count II, assault on a federal officer.  The Government

---

[1] The prosecutor argued that the expert's opinion was highly speculative because the expert did not perform any chemical analysis to conclusively determine that the substance was actually the Defendant's blood.

ORDER DENYING MOTION FOR NEW TRIAL - 4

produced sufficient evidence, which if accepted by the jury, would have proved each of the three required elements of the assault charge and disproved one of the elements of self-defense beyond a reasonable doubt.

A motion for a new trial, on the other hand, is governed by a much broader standard. *See* Fed. R. Crim. P. 33; *Alston, supra*. In considering a motion for a new trial, "[t]he district court need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of witnesses." *Id.* at 1211. With this standard in mind, the Court will now turn to each of the bases for a new trial.

**A.   Motion to Sever**

A motion for severance must be made both before trial and at the close of the prosecution's case-in-chief to preserve the issue on appeal. *United States v. Yarbrough*, 852 F.2d 1522, 1531 (9th Cir. 1988). There is a question as to whether the Defendant preserved this issue because he did not raise it at the close of the Government's case-in-chief nor at the close of evidence. *See* Ct. Rec. 74 ("Defendant's Motion to Sever Counts 1 and 2, filed November 5, 2004, Ct. Rec. 65, is DENIED with leave to renew at the close of evidence.")(emphasis added). At the close of evidence, the trial court is in the best position to assess whether joinder is prejudicial because the evidence is fully developed, the parties are best prepared, and the witnesses' recollections are freshest. *See* Fed. R. Crim. P. 14; *United States v. Free*, 841 F.2d 321, 324 (9th Cir. 1988). The Court will proceed with the analysis on the merits

ORDER DENYING MOTION FOR NEW TRIAL - 5

nonetheless.

"The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged--whether felonies or misdemeanors or both--are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a).  The term "transaction" is to be interpreted flexibly and may comprehend a series of related occurrences. *United States v. Terry*, 911 F.2d 272, 276 (9th Cir. 1990)(*citing United States v. Kinslow*, 860 F.2d 963, 966 (9th Cir. 1988)).  Where joined offenses are neither connected nor provable by the same evidence, joinder is improper.  *Id*.  A Defendant may also challenge an otherwise proper joinder where such joinder would result in "actual prejudice," or in other words, would have a substantial and injurious effect or influence on the jury's verdict.  *Terry*, at 277.  To that end, Fed. R. Crim P. 14 provides relief where "joinder is so manifestly prejudicial that it outweighs the dominant concern with judicial economy and compels the exercise of the court's discretion to sever."  *United States v. Brashier*, 548 F.2d 1315, 1323 (9th Cir. 1976).

It should be noted at the outset that the initial joinder of these charges was proper under Fed. R. Crim. P. 8(a).  *Compare Terry*, at 274 (Holding that a drug and a felon in possession charge were improperly joined because the gun which formed the basis for the felon in possession charge was found thirteen days later during a search of the defendant's home).  Therefore, Mr. Grace was required

to show that joinder was improper under Rule 14 in order to prevail on his motion.

Defendant's Rule 14 argument fails for several reasons. First, the fact that the evidence of the drug deal was relevant to the assault on a federal officer charge undermines the Defendant's argument that severance would have cured the prejudicial effect of the joinder. The Government was required to offer this evidence in order to prove that the victim federal officer, Agent Zidack, was engaged in his official duties. The Defendant also relied on this evidence because the fact that drug dealers are fearful of being robbed bolstered his theory of self-defense. In his cross-examination of Detective Giese, defense counsel specifically elicited such information. TR, at 416 (Q. "During the course of your career have you encountered robberies or homicides that arose out of elicit drug deals?" A. "Yes" Q. "How frequently?" A. "I really can't tell you how frequently. I can say that it's not abnormal, it's, it occurs.").

The Defendant also argued that the joinder of the two charges prevented him from taking the stand in one charge and not the other. This argument was addressed by the Fifth Circuit in *United States v. Williamson*, 482 F.2d 508 (5th Cir. 1973). *Williamson*, similar to the case at bar, involved the joinder of a drug charge with an assault on a federal officer charge. The assault on a federal officer charge in *Williamson* arose from the defendant attempting to flee in an automobile after a drug bust and in the process striking a state narcotics officer with the car and narrowly missing hitting a car

ORDER DENYING MOTION FOR NEW TRIAL - 7

containing two other agents.  *Id*. at 511.  The defendant in *Williamson* took the stand to explain that he drove away from the scene because he feared he was being robbed by a band of shabbily dressed hippies (who were in fact undercover officers).  *Id*. at 512.  On cross-examination, the defendant denied any knowledge of a drug transaction.  *Id*.  The Fifth Circuit found that the defendant was not substantially prejudiced by the joinder of the two offenses and that severance under Rule 14 was only required when the defendant wished to testify in his own defense on only one of two joined offenses which were clearly distinct in time, place, and evidence. *Williamson*, at 512 (*citing Cross v. United States*, 118 F.2d 987 (D.C. Cir. 1964)).  Mr. Grace, like the defendant in *Williamson*, did not make a convincing showing he had both important testimony to give concerning one count and a strong need to refrain from testifying on the other.  *United States v. Armstrong*, 621 F.2d 951 (9th Cir. 1980).

For all the foregoing reasons, the Defendant's motion for a new trial on this basis shall be denied.

**B.**    **Motion to Suppress**

The Defendant was questioned while waiting for surgery and contended that his waiver of his right to remain silent was neither knowing nor voluntary as a result of his being under the influence of Morphine.  To be admissible a confession must be voluntary.  *Lego v. Twomey*, 404 U.S. 477, 483-85 (1972).  The Government has the burden of proving that a confession was voluntary by a preponderance of the evidence.  *Lego*, at 489; *United States v. Haswood*, 350 F.3d 1024, 1027 (9th Cir. 2003).  A statement made under the influence of

alcohol or drugs can remain voluntary if the statement is "the product of a rational intellect and a free will." *United States v. Banks*, 282 F.3d 699, 706 (9th Cir. 2002)(internal quotations omitted)(overruled on other grounds). On the other hand, a confession is involuntary if, viewing the totality of circumstances, "the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." *United States v. Harrison*, 34 F.3d 886, 890 (9th Cir. 1994) (citation omitted).

The case of *United States v. Martin*, 781 F.2d 671 (9th Cir. 1986) is analogous to the matter before the court.[2] In *United States v. Martin* the defendant received an injection of Demerol prior to being questioned by officers. 781 F.2d at 672. The Court of Appeals held that Mr. Martin's statements were voluntary because Mr. Martin was awake; relatively coherent; had not received excessive quantities or unusual combinations of drugs; had asked to speak to the officers; and his injuries, while painful, did not make him unconscious. *Id.* at 674. In order for a confession to be suppressed on the grounds that it was involuntary due to effects of drugs or alcohol, the

---

[2] The Government also relied upon *United States v. Lewis*, 833 F.2d 1380 (9th Cir. 1987); however, *Lewis* is factually distinguishable because in that matter there was no evidence that the defendant was experiencing any effects from general anesthesia or other drugs that would prevent her from knowingly and voluntarily waiving her right to be silent. *Lewis*, at 1388. The reasoning of *Lewis* is also distinguishable because the critical issue there was the trial judge's error in relying on his personal experience in recovering from anesthesia in determining whether the defendant's statement was voluntary. *Id.*

ORDER DENYING MOTION FOR NEW TRIAL - 9

surrounding circumstances must be extreme.  *Mincey v. Arizona*, 437 U.S. 385, 398-99 (1978)(Defendant's statement in near coma condition, in great pain, including tubes in throat and nose and a catheter in his bladder held involuntary.); *Townsend v. Sain*, 372 U.S. 293, 308-09 (1963)(*overruled on other grounds*)(Defendant's confession was held involuntary when he was unresponsive due to heroin withdrawal and was injected by doctor with phenobarbital and hyoscine to ease withdrawal symptoms.); *Medeiros v. Shimoda*, 889 F.2d 819 (9th Cir. 1989)(Holding that "the surrounding circumstances, including Medeiros' [blood alcohol level of 0.19] were insufficient to overcome his free will.").

Detective Giese and Lieutenant William Rose testified at the suppression hearing.  The Court found both officers to be credible. Based of their testimony, the Court determined that the Defendant was alert, coherent, and provided meaningful answers to questions. It further found that while it was unusual for a suspect to be questioned under these circumstances, the Defendant's waiver of his right to remain silent was knowing and voluntary.  At trial, defense counsel emphasized this point by asking Detective Giese whether the Defendant had been the first one to initiate contact with law enforcement.  *See* TR, at 413.  Moreover, during the pretrial phase of this matter, the Defendant's argument that only his exculpatory statements should be admitted worked against him.  If the Court accepted as voluntary the Defendant's statement that he believed he was being robbed by the individuals who confronted him in the parking lot, it followed that the Court would have to find <u>all</u> the statements

ORDER DENYING MOTION FOR NEW TRIAL - 10

he made in the hospital to be voluntary since the statements were made within a relatively short period of time.

For all the foregoing reasons, Defendant's motion for a new trial based on the Court's failure to grant his motion to suppress must be denied.

### C. Prosecutorial Misconduct

During closing arguments, the prosecutor made the following statements regarding the burden of proof on self-defense.

> [T]he defendant is required to come forward with three elements. And notice there, he has to come forward with all three or meet all three of those elements.
>
> ....
>
> Second, the defendant has to show that he reasonably believed that use of force was necessary to defendant himself against the immediate use of what? Unlawful force.
>
> ....
>
> The defendant also has to prove if he's going to rely on a self defense theory, that he used no more force than appeared reasonably necessary in the circumstances.

TR, at 571-75.

Defense counsel did not object during these portions the Government's closing argument; accordingly, the Court is constrained to a plain error analysis. Fed. R. Crim. P. 52(b); *United States v. Olano*, 507 U.S. 725, 732 (1993). The Court must first consider whether there was an "error" that was "plain" and affected the "substantial rights" of the Defendant. *Id*. The Court must then determine whether the error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Id.*; *see also Johnson v. United States*, 520 U.S. 461, 467 (1997). As a

ORDER DENYING MOTION FOR NEW TRIAL - 11

general rule, prosecutorial misstatements, standing alone, seldom rise to the level of reversible error. *United States v. Young*, 470 U.S. 1 (1985). Notwithstanding, the Ninth Circuit has held that a prosecutor's misstatements regarding the burden of proof on an affirmative defense can amount to plain error even where the Court's instructions correctly stated the law. *United States v. Segna*, 555 F.2d 226 (9th Cir. 1977).

**(1)    Olano Test - Whether there was Error that was Plain and Affected the Substantial Rights of the Defendant.**

It should be noted at the outset that while the Ninth Circuit case of *Segna* predates the Supreme Court's decision in *Olano*, *Segna* was neither explicitly nor implicitly overruled and used the same rigorous standard to determine whether there was plain error. *Segna*, at 231 ("[W]e will reverse under Rule 52(b) only in those very exceptional circumstances where reversal is necessary in order to prevent a miscarriage of justice or to preserve the integrity and reputation of the judicial process."). Nevertheless, the Court will proceed under *Olano's* multi-step test, which guides the courts of appeal in determining whether the fairness of the judicial proceedings have been compromised.

In *Segna*, the defendant was charged with first degree murder and the defense at issue was insanity. *Id*. at 229. The court found that the defendant met his burden of production when he offered evidence that he was suffering from a fixed delusionary system which made him believe that he was a persecuted Indian. *Id*. The prosecutor in *Segna* made the following statements in closing arguments regarding the burden of production and the burden of proof on insanity: (1)

ORDER DENYING MOTION FOR NEW TRIAL - 12

"One of those presumptions is that a person realizes the consequences of his acts...this presumption continues until overcome by competent evidence;" (2) "The only difference between his (Dr. Gorman's) opinion and the other shrinks' opinions is that his opinion has a presumption of law with it. That is, a man is presumed sane;" and (3) "[U]nless you are convinced by scientific evidence the man (Segna) is sick and doesn't appreciate the wrongfulness of his acts, [you must return a guilty verdict.]" *Id*. at 230. The *Segna* Court found that these statements improperly shifted the burden of proof from the Government to the Defendant. *Id*. at 232. The Court further held that "[a]lthough no objection was interposed, the argument amounts to plain error and requires reversal." *Id*. at 230.

In the instant matter, Defendant's only burden on the issue of self-defense was a burden of production. *See United States v. Guess*, 629 F.2d 573, 577 (9th Cir. 1980)("The general rule is that once a criminal defendant satisfies his burden of production with respect to an affirmative defense, the prosecution must prove the inapplicability of this defense beyond a reasonable doubt."). Whether the Defendant met his burden of production was a legal issue for the Court. The Court necessarily decided that the Defendant *had* met his burden of production when it overruled the Government's objection to the inclusion of a self-defense instruction. It was therefore error for the prosecutor to argue to the jury that the Defendant had not met this burden by stating that the Defendant had to "come forward," "show", and/or "prove" these three elements. *United States v. Freter*, 31 F.3d 783, 789 (9th Cir. 1994).

ORDER DENYING MOTION FOR NEW TRIAL - 13

The extent of the error does not stop there because the prosecutor's misstatements touched on more than the burden of production.  In making its determination that the remarks crossed the line into the burden of proof, the Court is mindful of the fact that the jury likely did not appreciate, nor should it have been expected to appreciate, the difference between the burden of production and the burden of proof.  The Government argues that "[t]he Court merely noted that evidence of self-defense had been offered, but did not instruct the jury about any standard of proof attendant with such evidence."  *See* United States' Response, at 5.  In so stating, the Government seems to presume that it was proper for the prosecutor to highlight the Defendant's failure to meet the burden of production in an effort to disprove one of the elements of self-defense.  This is a dangerous position because it illustrates exactly the issue that the Court raised, that is, whether the jury could have been left with the misunderstanding that the Defendant could not prevail on self-defense if he did not offer sufficient evidence on one of the elements--as opposed to asking the correct question--whether the Government disproved the applicability of the defense beyond a reasonable doubt.

The Government attempts to distinguish the reasoning of *Segna* by arguing that Mr. Grace did not rely on "substantial evidence" supporting self-defense.  *See* United States' Response, at 8.  The Court disagrees.  Defendant had more than sufficient evidence to support his theory of self-defense.  Where there are close factual issues which leave room for a "reasonable inference inconsistent with guilt," the Court should scrutinize the error with "particular care."

ORDER DENYING MOTION FOR NEW TRIAL - 14

*United States v. Grunberger*, 431 F.2d 1062, 1067 (2nd Cir. 1970); *Segna, supra*.

In this matter, Agent Zidack, the victim federal officer, testified that the jacket he was wearing that night partially obstructed the "police" lettering on his bulletproof vest. TR, at 262. Zidack further testified that he could not recall verbatim either his or TFO Taylor's verbal commands. TR, at 277, 280. Although this theory was not highlighted by the defense during its closing argument to the jury, Zidack also admitted on cross-examination that he could have jumped out of the way of Defendant's vehicle. TR, at 283-85.

The Defendant elicited further evidence supporting his theory from TFO Jay McNall and the citizen witnesses. TFO McNall testified that he could not discern exactly what TFO Taylor and Agent Zidack were yelling because he was in his vehicle with the windows rolled up as he approached the scene. TR, at 441. Fred Shuman, a citizen witness, testified that he observed Agent Zidack wearing a green hooded jacket and that he did not recall if either TFO Taylor or Agent Zidack had any visible markings on their clothing. TR, at 448-49. Eli Kington, a second citizen witness, testified that he heard the two individuals in front of the Defendant's car yelling "freeze," but did not recall anything more specific about the verbal commands. TR, at 458-60. Mr. Kington also testified that the two individuals he observed in front of the Defendant's vehicle (Taylor and Zidack) were wearing dark clothing. Id.

Based on the foregoing, the Court concludes that the

ORDER DENYING MOTION FOR NEW TRIAL - 15

prosecutors' misstatements amounted to error that was plain and affected the substantial rights of the Defendant.  Once the Defendant came forward with sufficient evidence to support his affirmative defense, the burden shifted to the Government to prove the inapplicability of the defense and no presumption was available to aid the Government in meeting its burden of proof.  *See Guess*, 629 at 577; *Segna*, 555 F.2d at 231.  AUSA Harrington's remarks, which informed the jury that the Defendant had to come forward, show, and/or prove the elements of self-defense, shifted the burden proof from the Government to the Defendant and deprived the Defendant of the benefits of the reasonable doubt standard.  *Segna*, at 230.  The error was plain because it was clear and obvious.  *See Government of Virgin Islands v. Smith*, 949 F.2d 677, 686 (3rd Cir. 1991)(The possibility that the jury will misallocate the burden of proof on self-defense is readily apparent.).  The error also affected the substantial rights of the Defendant, specifically, his right to have the Government prove each element of the case against him beyond a reasonable doubt.  *Segna*, at 230; *see also United States v. Roberts*, 119 F.3d 1006, 1015-16 (1st Cir. 1997)(The prosecutor may not imply that the defendant has a burden of proving his innocence.); *Smith*, 949 F.2d at 682 (Diminishing the prosecution's burden of proving every element of the crime violates the defendant's right to due process.).  Furthermore, because the Defendant presented credible evidence to support his theory of self-defense, the Court finds that the error likely affected the outcome of the proceedings.  *Olano*, at 733 (An error which "affects substantial rights" in most cases means

that the error was "prejudicial," although the terms are not synonymous.).

### (2)  Olano Test - Whether the Error Seriously Affected the Fairness of the Judicial Proceedings.

Having determined that the prosecutor's statements amounted to error which interfered with a substantial right, the Court turns to the question of whether that error seriously affected the fairness, integrity, or public reputation of the judicial proceedings.  There are several factors which convince the Court that the first trial on the assault charge was fundamentally fair.

As discussed *supra*, the prosecutor's misstatements were error. Nevertheless, the remarks made by AUSA Harrington are sufficiently distinguishable from the statements made by the prosecutor in *Segna*. In *Segna*, the prosecutor explicitly stated that the presumption of sanity continued to exist, no such explicit statement was made here. 555 F.2d at 230.  The prosecutor in *Segna* also told the jury that the opinion of Government expert had "'a presumption of law with it' while the other experts did not." *Id*. at 231.  This statement is akin to vouching which the Ninth Circuit has held to be plain error outside this context. *See, e.g., United States v. Kerr*, 981 F.2d 1050, 1054 (9th Cir. 1992).  Moreover, while the Court recognizes that a jury is prone to place "great confidence" in the statements of the prosecutor, *United States v. Carter*, 236 F.3d 777, 789 (6th Cir. 2001), a jury is also presumed to have followed the Court's instructions. *Richardson v. Marsh*, 481 U.S. 200, 211 (1987).  The error here was limited to the rebuttal argument and the Court

ORDER DENYING MOTION FOR NEW TRIAL - 17

properly instructed the jury that the burden is always on the Government.  Finally, although the Defendant had a viable theory of self-defense, the issue was not as close as the insanity issue in *Segna*.

The Court is mindful that the Government's burden of proving the Defendant's guilt beyond a reasonable doubt is a fundamental principal of our criminal justice system.  While the Ninth Circuit has recognized that misstatements regarding the burden of proof on an affirmative defense can amount to plain error, the Court is not convinced that the threshold was met in this case.  *See United States v. Rodriguez-Preciado*, 399 F.3d 1118 (9th Cir. 2005)(A prosecutor's comments regarding the Defendant's failure to testify did not amount to plain error.); *Girtman v. Lockhart*, 942 F.2d 468 (8th Cir. 1991)(Defense counsel's failure to object to prosecutor's statement that the defense had to prove self-defense did not amount to ineffective assistance of counsel.); *United States v. Yancy*, 688 F.2d 70 (8th Cir. 1982)(The court's jury instructions can correct a prosecutor's misstatement of law.); *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)(Prosecutor's remarks did not prejudice a specific right, such as the right against self-incrimination.).

Accordingly, the Court concludes that the prosecutor's error did not seriously affect the fairness of the proceedings.  The Court does not make such a decision lightly, and in so doing, has considered both the prejudice to the defendant and whether or not the prejudice was cured by the trial judge.  *United States v. Potter*, 616 F.2d 384, 391-92 (9th Cir.1979).  For all the foregoing reasons,

ORDER DENYING MOTION FOR NEW TRIAL - 18

**IT IS HEREBY ORDERED:**

1. Defendant's Motion for Judgment of Acquittal **(Ct. Rec. 141-1)** is **DENIED.**

2. Defendant's Motion for a New Trial on the basis that the Court erred in denying his Motion to Sever **(Ct. Rec. 141-2)** is **DENIED.**

3. Defendant's Motion for a New Trial on the basis that the Court erred in denying his Motion to Suppress **(Ct. Rec. 141-3)** is **DENIED.**

4. The Motion for a New Trial on count II on the basis that the Prosecutor's Misstatements amounted to Plain Error is **DENIED.**

5. The sentencing date of June 17, 2005 is **CONFIRMED.**

**IT IS SO ORDERED.** The District Court Executive is hereby directed to enter this order and furnish copies to counsel.

**DATED** this 5th day of May, 2005.


                    s/ Fred Van Sickle
                    Fred Van Sickle
          Chief United States District Judge

ORDER DENYING MOTION FOR NEW TRIAL - 19